Frank Sproul is appearing for appellate and petitioner. If I may, your honors, I'd like to start by looking at the relief that the respondent is requesting were this case to be remanded. Why that's significant is, number one, I think the Singh case, which is very important to this, and number two, the government in their reply brief seems to think that the relief that's ultimately being sought here is asylum, and that's not the case. What we have here is a gentleman who's had a green card since 1974. He's seeking discretionary relief based on his long-time residency under 212C, which was determined to not be, was still applicable to some of those in proceedings before the 1996 legislation. Could you speak up a little? Oh, sorry, your honor. So my point is that it's important to understand that the Singh case stands for the proposition, pretty much deeply rooted in our jurisprudence, that civil cases should be decided under merits, that the law abhors technical defaults, and in the language of the Singh case, that the BIA and the lower courts should not issue inabstantial orders when it would result in the unconscionable result of a person clearly eligible for relief from deportation. That's what we have here. This gentleman had appeared before the immigration court. In the Singh case, the person was not applying for something that was discretionary with tender mercies of the Department of Justice. That was the person who was entitled to the relief. That's not really the case, and I wish it were the case. I'm an immigration law practitioner, and if every adjustment of status based on a petition by a United States citizen was automatic, my life would be a lot easier. There's a whole series of bars of inadmissibility. There may have been fraud. Clearly, the alien in Singh did something wrong. He was in deportation proceedings. He had overstated visa. It's not clear, but it wasn't like he was – Yes, but the government conceded in that case that all that required was that if he had showed up, he would have gotten the adjustment of status. There was no dispute in that case about his entitlement. I don't think it's altogether clear, Your Honor. I mean, simply – certainly this Court in the Singh case simply said that he had relief from deportation, and I think in this case, I think it's important to look at what relief he's seeking. His ultimate success, I believe, as an immigration practitioner would be virtually assured under the 212C standards. What we have is a gentleman from the Islamic Republic of Iran who's resided in the United States for well over 20 years. He had a United States citizen spouse, two United States citizen children, and the only ground of removability – When you told the BIA it was urgent because he was about to lose – he had a couple of months, and he would lose his eligibility for an adjustment of status because he would become 21, and you got a very quick remand to the immigration judge, and then nothing happened. Why was that? Your Honor, if I may – I believe I have oral argument in Padashvi I.N.S. on Thursday. That's not this case. This is not a remand based on a – Okay. But I'd rather do an oral argument if you'd like, Judge. No, no. Save it for Thursday. Yes.  This is a very different kind of fish, Your Honor. Well, now, the Singh case, wasn't he on his way to the hearing? He just had the wrong time. He had the right date, and it was two or three hours late. He misplaced the hearing notice and then said he was late. Now, I think that's a distinction without a difference. Your man was clear in Boston, right here, as far as we know. Right. I understand. He never even made an effort to get on a plane or anything like that. Well, I – And we know why. Right. But I think it's very clear that Singh spends very little time on the particular facts of the misappearance. It really focuses on the unconscionability of a person being denied a hearing on the merits. Well, given what his error was in Singh – I mean, the problem in Singh was that he tried very hard to get there, and he thought he'd done everything he could. There was just a misunderstanding with the lawyer who gave him the wrong time, he said. Well, I thought he said that he misplaced the hearing notice. But I think it does demand, or certainly Singh asks you to look at the totality of the circumstances. And here we have a number of extraordinary facts. Someone who had been in proceedings for over five years had appeared nearly a dozen times. The point is, there has to have been, and for lack of a better term, a rest ipsa quality to someone who had been vigorously appearing for over five years. The one hearing where he's finally eligible for relief from deportation, it's the one hearing subsequent to Magana-Pisano, he misses the court date. As I think I use a lot of adjectives in my briefs, there's something murky about what happened. We know he got bad advice from a family member. There was some facts involving his life in Boston that the BIA simply didn't consider. But taken in its totality, and under the reasoning of Singh, due process demands that he simply has a hearing on his merits. What if he just got – what if he got a tip from his barber that he didn't need to do it? Was that – instead of his brother, would that make any difference? His brother was well-educated, but he wasn't a lawyer. If his guy shines his shoes or cuts his hair or told him, you don't have to go there. Well, if it was the barber and he hadn't appeared 12 times, I think my argument would be weakened. But, again, but I'm not – it's not just – the argument isn't just that it was the brother. And it was also that there were exceptional circumstances. And the BIA simply didn't allow them to be presented. And – and I – if I'm flogging a dead horse, please let me apologize – Singh simply does really focus on the civil law precepts that defaults are disfavored, especially in a situation where there's clear relief. And that's what we have here. I mean, let's not forget that, that we have a one nonviolent offense that occurred nearly 12 years before the misappearance. I'm not excusing it, but under the standards of 212C, this case would be granted. And, again, I do believe there's a totality of circumstances that we can look at. Certainly this Court has said that. And certainly we also have to look at it. We're talking about, obviously, the possibility of deportation, based on rather technical grounds, to what our country calls the axis of evil. So that is something I think is appropriate to consider in the totality of circumstances analysis. But didn't they order him deported to India? Again, that's Thursday, Judge. Oh, okay. He is a native citizen of that state. Of Iran, yes. Okay. Thursday goes to India. Is this the one that's going to Iran? Right. Well, it seems to me that he had his better excuse for not showing up because his wife was ill, but he didn't raise that initially. It wasn't raised until it got on to the BIA. And that was, if I may respectfully point out, that's when I became detained. I mean, the problem was he had the disastrous advice of his brother, who simply felt that it would be open as a matter of course even if you don't appear. That was wrong. He didn't – he arrogated to himself the position of being a kind of behind-the-scenes attorney and didn't look at the full facts. He didn't know what – Is his brother a professor? Apparently, yes. And certainly that goes to the possibility of persecution. He's a professor who's also rather prominently known. He fought against the fatwa against Salman Rushdie. I mention that only to show that this is – the idea of deportation of anyone from this family is disastrous. But, I mean, the reason the brother didn't bring up any of the other facts is because he's not an attorney. He didn't know what exceptional circumstances are as defined under the Act. But he didn't try to call the immigration department or the judge and say, look, I've got this advice or I've got a sick wife or any of this. He just didn't show up, period. Didn't show up, operating on the assumption. He got the bad advice that if you don't show up, it's okay because – I hope this isn't Thursday, but he did call, didn't he? He called and he said he was opening his business a couple of days before and he wouldn't be able to come because he was involved in his business. There's some discussions that he had with the district council in that case, a gentleman I'm aware of. And that was – there was all of these things going on. Again, that's where, you know, I certainly – opening a business is not exceptional circumstances. But these other things were going on, but they were not brought out in any formal fashion. He spoke informally with the district council and his brother, who didn't know the law, made a motion that had no basis in law. Okay. After all that happened, you get here. Did you ever send in any evidence of her medical condition? This was a problem. What happened is, you know, his sworn declaration, and I requested the opportunity for a remand to, number one, him be able to testify to that and to submit further evidence. They didn't even accept the declaration. They said we will not set new evidence on appeal. So that's where we were. And, you know, I had to act quickly because we had a bag-and-baggage letter, parlance of immigration law. So it was a rather hastily put-together motion to rescind the unofficial order when I came in. But a long and detailed sign that a sworn declaration was presented was not considered at all. And, again, the reason that wasn't presented initially, because he was operating under the disastrous advice of the family member. So – You want to save time for rebuttal? I'd like to do it, Judge. You've got about eight seconds, but we'll give you a couple of minutes. Counsel, would you identify yourself for the record first? I'm sorry, Your Honor, I had a little trouble. Do you want to identify yourself for the record? Yes, sir, please. I'm Laura Flippen. I'm with the Department of Justice, and I represent the government in this matter. Okay. Well, let me ask you, as representative of the Department of Justice, do you really want to – this man has two children and a wife from Boston. Do you really want to send them to Iran, which is a very evil nation that is an enemy of ours? Is it necessary to do that? Your Honor, I think in this case the only issue before this Court is whether – No, but I asked you a question. Do you really want to do that, send them to Iran? The immigration judge and the Board of Immigration Appeals have made a determination in this case – The answer is yes. We really think, as the Justice Department, that your function as the Justice Department is to send a person who has a wife and two children and who has done nothing wrong, send them to Iran because he didn't show up for one hearing after showing up 10 or 12 times over a period of years. That's your considered judgment as the Justice Department. Your Honor, as a representative of the Justice Department, yes, the government does wish to commence removal and deportation for Mr. Afrasiabi. And just so the record's clear, the deportation was based on an aggravated felony conviction, wasn't it? That's correct, Your Honor. The alien in this case has a conviction for five counts of possession of a stolen vehicle, which qualifies as an aggravated felony under the ADPA statute. Do you agree with opposing counsel's statement during his presentation that if he had appeared for his hearing, he would have been a suitable candidate for the exercise of discretion? No, Your Honor, I don't agree with that contention. As distinct from the same case, for example, where the court specifically pointed out and where the INS counsel conceded an argument that had that alien shown up, it would have been merely a formality essentially of granting him the relief sought. In this case, the relief is discretionary under 212C, to grant the discretionary relief to this alien to withhold deportation. And I think with this alien's background and record, an aggravated felony conviction for possession of a stolen vehicle, five counts of that, as well as the alien's lack of candor with the tribunal regarding the reasons for his absence and whether he had filed a motion for change of venue, that he would not be a candidate that would be given the same level of credence for his claim that a candidate like Singh would be. I think the Singh case is distinct for some other reasons that I would like to point out. How long ago was the criminal problems with the automobile? Your Honor, I believe the act in that case, the offenses were concluded in 1993. He was convicted in 1993. Is there any evidence that in the past 10 years he's done anything wrong? There is no evidence of that, Your Honor. Are you going to deport the wife and children to Iran also? Your Honor, I believe the wife is a naturalized U.S. citizen, so she would not be deportation eligible. Would he ever be eligible to return? Your Honor, the aggravated felony crime would commence a bar for 10 years for return to the United States, but after that time he would be able to apply for a visa for reentry. Ten years from deportation or 10 years from date of offense? It's 10 years from deportation, Your Honor. So if he wants to see his wife and children again, they have to go to Iran? If he wants to see them in the next 10 years? For him to be able to return to the United States. No, I said if he wants to see his wife and children. If they are present in this country as opposed to in Iran, yes, Your Honor, and they did not travel to Iran. Assuming that when he gets to Iran he can get out again, but that's not of any concern, is it? It is not the concern before the courts. Of the Justice Department. It is not the Justice Department's concern at this moment, Your Honor. He hasn't made such application and he's currently present in the country, not present in Iran. Well, it's good to know that Iran is the kind of a country we feel safe deporting people to because they committed a car offense 10 years ago. It's good to know that about Iran. What about Iraq before the war? Would that have been a good place to deport people to also? I believe that we have routinely. I believe you have deported them to Iraq. At the same time, we were saying all the things about Saddam Hussein. Okay, anything else? Your Honor, if I could just have a few moments to distinguish the Singh case. Counsel points to that as a case which should suggest in this matter that there are exceptional circumstances present which weren't reopening. In the Singh case, as Your Honor has pointed out, the alien in that case made a serious attempt to get to the hearing. He drove several hours to get there. He went to his attorney's office. He mistook the time. And the court noted that he could have easily misunderstood the time of the hearing. In this case, there's no question that the alien understood the time that he was supposed to be present at the hearing. He had been told both in writing by the court that if he didn't appear, he would be subject to an absentia order. He'd been told that in person by the court when he appeared before the immigration court only two months earlier. He'd also been told that by his former attorney when his former attorney withdrew. And his attorney made it clear to him in writing in the withdrawal letter that if he didn't appear at the hearing, he would be subject to an absentia order. When was it that he called this INS counsel? Was that immediately before the hearing or a week before? It's not clear from the records, Your Honor, but I believe it was after the alien appeared before the immigration court in June of 2000 and before the hearing which he missed in August 2000. The other distinctions from the Singh case are, Your Honor, in particular, the court noted in that case that Mr. Singh, unlike other aliens, was not merely trying to belay the inevitable. He had a very clear claim to relief, and the INS conceded that in almost any instance he would have been granted that relief. Here, the Petitioner has committed a very serious crime, and the relief that he would be seeking would be discretionary. It is by no means guaranteed. In addition, the court did distinguish cases, specifically citing a First Circuit case where the alien in that case had been subject to deportation based upon an aggravated felony. And the court in Singh distinguished that case from the relief that was being granted to Mr. Singh. Mr. Singh had also specifically requested of the court a change in venue. He had requested that in writing as is required by the rules of the Board of Immigration Appeals. The Petitioner in this case did not request that motion. He did not request that change of venue. He submitted no motion in writing, even though he was instructed by the immigration judge at the hearing in June where he was personally present pro se at the June 2000 immigration hearing. He indicated to the judge that he wished to change the venue, and the immigration judge noted to him that he was not changing the venue at that time, but the alien needed to submit that information in writing. He specifically told him that if he submitted the request for the change of venue and it wasn't granted, he needed to appear at the August 2000 hearing, which the alien did not do. It was never filed? It was never filed, Your Honor. Did he claim that he tried to file it? He claimed when he moved to vacate the in absentia order that he had filed a motion for change, or that he had made a motion for change of venue, but that was not the case. And the board in its decision upholding the IJAS in absentia order specifically found that there had been no motion for change of venue that had been filed with the court. I think also, Your Honor, it's important to note here that even if the court were to find that there were exceptional circumstances present here that would have warranted a motion for reopening, the evidence that the alien sought to present regarding that was previously available to him. It was available to him at the time that he asked the IJ for reconsideration, and that is the representation that his wife was ill and that he was unable to travel. That was information that was never presented to the IJ. It was presented to the board for the first time. Now, he indicates that, you know, he did his motion to the IJ to vacate and reopen on the advice of his brother and that his brother gave him poor advice. He's never submitted that his brother was an attorney or that he thought he was his legal counsel. He's only indicated that he relied on his brother for advice, and he's, in fact, conceded that he did so erroneously. He also concedes that he read the information that his brother submitted to the court and he signed it. So if he had had other information, such as the fact that his wife might have been ill, he could have submitted it at the time. That was a better excuse, wasn't it, if true, the one about the sick boy? It was a better excuse, Your Honor. I think the government would not concede that that would constitute exceptional circumstances. There's been no indication that the alien ever intended to attend the hearing where he was absent. He's presented no evidence of an airline ticket or any other information that would suggest he ever intended to be present at that hearing in the first place. And I think in order to provide exceptional circumstances, the sudden illness of his wife would have to be shown to be something beyond his control at the time, that he couldn't have made reservations a month in advance or he would have had to cancel his reservations for a plane trip to the court. Your Honors, I see my question. Would that have been enough given the statute which says such as serious illness of the individual or the death of a relative? Wouldn't you be telling us that serious illness of a relative is not enough? I think, Your Honor, the government would not concede that that would fit the definition of exceptional circumstances. But under the same case, I understand that this Court might certainly deem it so. Your Honors, I see my time is up. If there are no further questions, the government would simply ask that the Court affirm the district court's ruling in this case. Thank you, counsel. Thank you, sir. My time is very brief, Your Honor. Well, we'll give you a minute or two if you have something that you think is going to help. Well, I hope so. One very important point, just in terms of the underlying criminal activity, the government was incorrect. The criminal activity occurred in 1990 on pages 19 of this. Well, legally it doesn't matter much. Right. Well, in terms of the criminal transactions, so we have 14 years of law abidance, number one. Number two, again, it goes back to this rather murky bit of business. If I go back to the change of venue, was it filed or not? Well, it was. It was filed together in a rather, you know, unprofessional fashion. The motion to reopen was called an emergency motion to vacate and to change venue, the one that was clearly written by the brothers. So he attempted to do it. He tried to do it all in one piece. He didn't do it before the hearing. He didn't do it before because he was operating under the assumption, based on the brothers, that since the judge said the motion to venue would be changed, you can just not show and it will be granted as a matter of law. And, again, I think the Court is properly focusing on the notion of deportation to the Islamic nightmare that is Iran, the permanent separation from families. We have that on this side. On the other side, we have the integrity of in absentia orders. Well, yes, if you get to the discretionary issue that he would have gotten to if he'd been at the hearing, those would have been the arguments. But he never got there because of the in absentia. So I'm saying what we have on the one side is the alleged integrity. That's not the issue here. The case here clearly was the in absentia order proper. And I'm saying that this Court has, through a series of cases, winnowed away at the harsh and mechanical application of in absentia orders based on the very basic principle. We've never gotten to the point where we say if there's a really good claim on the merits, there's no requirement of his showing of exceptional circumstances. That's your client's burden to show that. Absolutely. But that is certainly a factor to consider, and Singh obviously makes that a component of the analysis, the strength of the relief. And I think when you take the strength of the relief coupled with the harshness of deportation, coupled with the near certainty of relief, and I say this as an immigration practitioner, if I couldn't win this case, I'd hand in my ticket. Finally, there is facts. I'll be emerging in the record forgiving his failure to appear. All we're asking here is a hearing on the merits. Were this case the grant, he would be for an I.J. and he would have a full and fair hearing. That's all we're asking. Thank you. Okay. The case is charged to be submitted. The Court will take a brief recess before the final case of the morning. Thank you.
judges: Reinhardt, Siler, Hawkins